THE STATE, WEST JERSEY TRACTION COMPANY, PROSECUTORS, v. THE BOARD OF PUBLIC WORKS OF THE CITY OF CAMDEN AND THE CAMDEN HORSE CAR RAILROAD COMPANY.

1. The West Jersey Traction Company presented a petition to the board of public works of Camden, requesting permission to lay a street railway in certain streets in said city. Afterward, without notice, at a

special meeting of the board, an ordinance was adopted giving permission to the Camden Horse Railroad Company to lay its tracks in any street in the city. One of the members of the board voting for the ordinance was a stockholder in the last-named company. *Held*, that the former company had a standing to prosecute a writ of *certiorari* for the purpose of setting aside this ordinance.

2. The adoption of this ordinance was a judicial act, and is voidable, because done without previous notice to interested persons.

3. It is also voidable, because one of those participating in its adoption was specially interested in the result.

On *certiorari*.

This writ brings up an ordinance passed by the board of public works of the city of Camden, at a special meeting held on June 19th, 1893, entitled "An ordinance confirming and granting consent and permission to the Camden Horse Railroad Company to lay and construct its railway tracks, and authorizing it to use electric motors to propel its cars, and erect poles and wires therefor in, upon and along the public streets and highways of the city of Camden," and the ordinances, rules and notices under which said meeting was held, and the vote by which said ordinance was passed, and the members present at said meeting.

Argued at November Term, 1893, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiffs in *certiorari*, *Thomas E. French* and *Samuel H. Grey*.

For the defendants, *David J. Pancoast* and *Thomas N. McCarter*.

The opinion of the court was delivered by

REED, J.    The questions involved in this case spring out of the efforts of each of two corporations to secure the right to lay street railway tracks in the same streets in the city of Camden.

The Camden Horse Car Railroad Company was incorporated by an act of 1868. *Pamph. L., p.* 640. The act gave the company power to construct a railway on certain named streets in the city of Camden. By a supplement to that act (*Pamph. L.* 1868, *p.* 638), the company was empowered to maintain a railroad on Delaware, Market and such other streets as might be necessary for the business of the company.

By a supplement (*Pamph. L.* 1872, *p.* 512), the company was empowered to build roads on any public road or highway in the city of Camden, or on any public road or highway extending from said city into the county of Camden.

Then, by the act of 1893 (*Pamph. L., p.* 144), it was enacted that thereafter it should be unlawful for a street railroad company organized under a general act, or a special charter, to construct any railroad track or tracks, or any extension of the same, through or along any street of any municipal corporation, without first obtaining the consent of the common council, board of aldermen, board of public works or other governing body having control of the public streets.

On June 19th, 1893, the ordinance brought into this court by the present writ was passed by the board of public works of the city of Camden. This ordinance purports to confirm a consent which had been already given to the Camden Horse Car Railroad Company to build railroad tracks along any street, from time to time, as by it deemed necessary.

The legality of this ordinance is now attacked.

The defendants, in the first place, deny the right of the prosecutors to make this attack. They claim that the West Jersey Traction Company has no special interest which is affected injuriously by the ordinance. It is, therefore, essential that the position of the traction company, in relation to the matters affected by the ordinance, should be displayed.

The West Jersey Traction Company was organized under the provisions of the general act passed in 1893. *Pamph. L., p.* 302. This act provides for the association of three or more persons to, *inter alia*, construct and operate street railways, either by extensions of existing railways, or by building

new lines either wholly within, or partly within, or wholly between cities.   It provides for the filing of the certificate of incorporation in the county clerk's office, and then in the office of the secretary of state; and further provides that, at the time of the last filing, the sum of $25,000 shall be paid to the state treasurer.   Upon such filing and payment, the persons associated become a corporation.

It provides that, before beginning the construction of such extensions or new line, such company shall file in the office of the secretary of state a description of the route of such extension or new line, showing the termini of such extension or new line, together with a map exhibiting the same, with the courses and distances thereof.

It provides that, upon filing such description and map, such company shall thereby secure the exclusive right to build such extension or new line, provided such corporation shall have obtained the consent of the body having the control of streets, as to the route.

The prosecutors claim that they have performed all the conditions required to constitute them a corporation under this act, and that they had filed a route over some of the streets of Camden, at the time when the ordinance was passed, giving consent to the defendants to occupy these same streets. They had also, on May 15th, 1893, presented to the board of public works a petition requesting permission to lay tracks in the said streets.

If all this be so, I entertain no doubt of the right of the prosecutors to sue out this writ.   After the filing of the route mentioned, the two companies stood upon an equal footing, each asking for municipal consent to its occupation of these streets.   But after the consent was given to the defendants, and so long as that consent stands as a valid license, the aspect of affairs is entirely changed.   The consent given to the one practically excluded the other from all hope of obtaining any right in the same street.   No one would believe for a moment that there is the faintest probability, while the present license stands, that any other license will be granted to any other

corporation. The license stands in the way of any fair consideration of the petition of the prosecutors. The right of the prosecutors, under these conditions, to call in question the legality of a license, which affects them in this way, should and does exist.

The defendants, however, insist that the prosecutors have not proved that they are a corporation, with a filed survey as claimed. It is insisted, *first*, that there is no proof that the sum of $25,000 was paid to the state treasurer at the time of filing the certificate of incorporation; *second*, that the description of route was filed simultaneously with the certificate, and so could not have been a corporate act; *third*, that there is no proof that a map was filed at all; *fourth*, that the description is void, because it contains several routes in one paper.

As to the first insistence, it is sufficient to say that a copy of the receipt of the state treasurer for the amount is certified by the secretary of state, and this copy was admitted in evidence and printed in the paper-book without objection. As to the second, I see no reason to think that the filing is not within the statute. As to the third, the secretary of state certifies that there is a map, and this certificate, like the receipt mentioned, was admitted and printed without objection. As to the last point, I am of the opinion that the description is sufficient. I do not understand that it is denied that a corporation organized under the act of 1893 has the power to build more than one, or to build one road with several branches.

If this power exists I can perceive no reason why the several descriptions of the roads, or of the road and its branches, may not as well be included in one paper as in several papers.

It is also observable, in respect to the objections aimed at the standing of the prosecutors, that the alleged defects are not directly, but only incidentally, under review. To afford the prosecutors a standing as prosecutors of this writ, it is only essential that it should appear that they would probably be injuriously affected if the license already granted is permitted to stand.

We think they are entitled to test the legality of the license.

Is the ordinance voidable? The facts proved show that the ordinance granting the license was passed without notice to the prosecutors of any time or place when they could be heard in respect to their claims to recognition and in opposition to the recognition of the rival company. They also show that one of the members of the board of public works who voted for the passage of the ordinance was, at the time, a stockholder in the Camden Horse Car Railroad Company.

It is insisted on behalf of the prosecutors that the passage of this ordinance was a *quasi*-judicial act and that it is voidable both on the ground that no notice of its passage was given to interested persons as well as upon the ground of the concurrence of an interested member of the board in its passage.

The requirements which must attend and the consequences which follow a judicial act are the following:

*First.* The person or body acting judicially is not liable in a civil action for the results of the act. *Township of Morris v. Carey*, 3 *Dutcher* 377.

*Second.* The act, if within the jurisdiction of the *quasi*-judicial body, is not attackable collaterally. *Township of Morris* v. *Carey*, *supra*.

*Third.* All persons interested in the act are entitled to a hearing, which involves a right to a previous notice of the intended action. *State, Vanatta,* v. *Morristown,* 5 *Vroom* 445.

*Fourth.* Interest in one or more of the *quasi*-judges, as a general rule, renders their determination voidable. *State, Winans et al.,* v. *Crane, Collector of Cranford,* 7 *Id.* 394.

The question, then, presented by the facts proved in respect of the want of notice and of the existence of interest is whether the granting of the license now attackable was a *quasi*-judicial act.

The board of public works is invested with much of the legislative functions which formerly belonged to the common council, but it is also invested with judicial as well as legislative functions; and it is the business of a court of review to

separate the one class of acts from the other class whenever the occasion arises. The form in which the determination of the board is expressed is no test, for acts performed by means of an ordinance may be either legislative or judicial. *City of Camden v. Mulford*, 2 *Dutcher* 49 ; *State, Vanatta*, v. *Morristown, supra.*

The cases in which the judicial quality of an act is considered alone, or in which judicial and ministerial functions are compared and differentiated, are numerous. *Mech. Pub. Off.* 639.

The reports, however, exhibit a surprising scarcity of cases in which the distinction between legislative and judicial functions, when exercised by a body having the power to execute both legislative and judicial acts, is considered.

In this court the difference between these two kinds of official action was discussed by Chief Justice Green in *City of Camden v. Mulford, supra,* and by Mr. Justice Depue in *State, Vanatta,* v. *Morristown, supra.*

In the latter case an ordinance had been passed by the common council of Morristown changing the grade of a street, thus making access to the prosecutor's premises more difficult. One of the objections urged against the legality of the ordinance was that no notice, by publication or otherwise, of its adoption had been given. This municipal action was held to be judicial in character. " The distinction," it was said, " is between those ordinances which adopt a general system of policy affecting all the inhabitants of a city or town or all the property situate within corporate limits, directing the execution of mere public duties, the burthen of which is borne by all equally, and those which provide for the making of a particular improvement affecting property in one locality, the cost of which is to be defrayed by specified individuals."

This general demarcation of the two orders of municipal acts was made with special reference to ordinances designed to accomplish improvements of the kind then before the court.

In all cases, I think, a legislative act must be regarded as one which prescribes a general rule of conduct, while a judi-

cial act is one which imposes burdens or confers privileges in specific cases, according to the finding of some person or body, whether the facts exist which make a general rule applicable to the specific case, or according to the discretionary judgment of such person or board as to the propriety of imposing the burden or granting the privilege in a specified case.

An ordinance prescribing the conditions upon which streets should be laid out or improved, and the procedure to be adopted in accomplishing these purposes, would, I suppose, be clearly legislative in character.

An ordinance, however, laying out a particular street or ordering it to be paved would be judicial in its quality. *Sage* v. *Laurain et al.*, 19 *Mich.* 137 ; *Waldron* v. *Berry*, 51 *N. H.* 136.

So, an ordinance fixing the qualification of applicants for license to sell liquor, and the conditions upon which licenses should be granted, would be legislative, while the granting of a license to a person is judicial. *State, ex rel. Reynolds*, v. *Board of Commissioners of Tippecanoe*, 45 *Ind.* 501 ; *Dufford* v. *Nolan*, 17 *Vroom* 87.

Now, I think that the act of the board of public works in adopting the ordinance in the present case was judicial. The question submitted to the discretion of the board was whether any or all or none of certain streets should be used for the business of a certain street railway company. I say " certain streets " because, although the grant of permission is couched in the most general terms and gives a right to use all streets in the city, yet the grant must be regarded as if each street was mentioned specifically, so that the conclusion can be drawn that the propriety of the occupation of each street was passed upon by the board.

It was an appeal to the board, in a special case, to grant certain privileges in such streets, and the residents along those streets were interested in the same way that residents in the vicinity of a house for license to sell liquor, in which an

application is pending, are interested in the result of that application.

But the ordinance contains not only permission granted to one corporation to occupy certain streets, but it contains a practical exclusion of another corporation from such occupation. It was a decision that one company should use, and another company should not use, certain streets named in the petition of the prosecutors. Now, the privilege of using these streets is obviously a matter of pecuniary concern to each of these companies. The fact that each craved this permission from the board to complete its grant of power from the state, shows that each regarded this permission as a valuable adjunct to its franchise. The decision of the board, therefore, involved interests which entitled the parties to a hearing before judgment. *State, Vanatta,* v. *Morristown,* 5 *Vroom* 445, 451.

The ordinance was passed at a special meeting, with no previous notice. For this reason, it is voidable.

Having concluded that the adoption of the ordinance was a judicial act, how is it affected by the special interest of one of the voting members of the board? The general rule is that no man can be a judge in his own case. *Broom Max.* 111.

It was doubted by Mr. Commissioner Dwight, in his opinion in *Foot* v. *Stiles,* 57 *N. Y.* 399, whether this natural principle of justice applies to any judicial officers except judges of courts *eo nomine.*

The case of *Regina* v. *Aberdeen Canal Co.,* 14 *Ad. & E., N. S.,* 854, cited in his opinion, seems to conclusively answer his doubt; and in this court, in the case of *State, Winans et al.,* v. *Crane, Collector of Cranford Township,* 7 *Vroom* 394, it was held that an assessment for laying out a highway was a judicial act, and was voidable for the reason that one of the commissioners who took part in fixing the amount of the assessment was specially interested as an owner of land through which the road ran. This rule, which excludes the interested judicial officer, is subject to one exception. This

exception arises when there is no one else to perform the duty, for it is clear that while the performance of a judicial duty by an interested officer *may* occasion a failure of justice, yet it is equally clear that the disqualification of the only person who can adjudicate strips suitors of their ability to pursue their legal rights at all, and so *must* result in a failure of justice.

A full discussion of the rule and the exception is contained in the opinion of Judge Folger in the case of *Matter of Ryan,* 72 *N. Y.* 1, 11, and in the opinion of Mr. Justice Bedle in the case of *State, Winans et al.,* v. *Crane, Collector of Cranford Township, supra.*

In the present case, as in the last-mentioned case, there was no necessity for the action of the interested member of the board, for there were others who could act without him. The fact that there were a sufficient number of votes, apart from his vote, to pass the ordinance, is no answer to the objection taken upon the point. The infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable. *State, Winans et al.,* v. *Crane, Collector of Cranford Township, supra.*

The ordinance is set aside.