THE STATE, MICHAEL T. CONNOLLY, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY AND THE COMPLETE ELECTRIC CONSTRUCTION COMPANY.

1. Under section 11 of the County Road act (*Pamph. L.* 1888, *p.* 397), contracts must be awarded to the lowest responsible bidder who furnishes such good and sufficient sureties as the board approves, unless, in the interest of the public, the board determines to reject all the bids.
2. If a question be raised as to the truth of statements in a bid which under that section would, on its face, entitle the bidder to the contract, the board cannot decide that question against the bidder and award the contract to another bidder without giving the former an opportunity to be heard.

On *certiorari.*

Argued at June Term, 1894, before Justices DIXON, REED and ABBETT.

For the prosecutor, *Gilbert Collins.*

For the Hudson county freeholders, *John A. McGrath.*

For the Complete Electric Construction Company, *James B. Vredenburgh.*

The opinion of the court was delivered by

. DIXON, J.   By this *certiorari* the prosecutor calls in question the validity of a resolution of the board of chosen freeholders of Hudson county, passed April 19th, 1894, awarding to the Complete Electric Construction Company a contract for an electric light plant for the new county road.

The statute under which such a contract must be awarded is, we think, the County Road act of April 7th, 1888 (*Pamph. L., p.* 397), the eleventh section of which provides that the board shall advertise for proposals, and thereupon shall award the contract " to the lowest responsible bidder who shall furnish such good and sufficient sureties as may be approved by said board; * * * but said board shall be under no obligation to accept the lowest bidder if they deem it to be against the public interest so to do, and may reject any or all bids, in whole or in part, if they deem it to be for the interest of the public so to do; and in case of such rejection, the said board shall again advertise for proposals."

Although somewhat inaptly expressed, we take the meaning of this provision to be that the board must award the contract to the lowest responsible bidder who furnishes sureties satisfactory to the board, unless, in the interest of the public, it determines to reject all the bids.

The following facts appear :

In January, 1894, the board advertised for proposals for erecting an electric light plant for the new county road, specifying in detail the nature of the work and materials required. At the board meeting held February 1st, Connolly, the prosecutor, presented his bid, offering to furnish the plant for

$78,900 ;. the Complete Electric Construction Company sent in its bid, asking $93,232.20, and several other bidders proposed at prices ranging from $102,580 to $119,360. On February 15th the board referred all the bids to "an expert electrical engineer, to examine the bids, systems and plants specified by bidders," and to report to the board. On March 21st this engineer reported that four of the bids (among them Connolly's) did not fulfill the requirements of the board, and that five of the bids (among them that of the Complete Electric Construction Company) did fulfill those requirements; and the report stated the grounds on which the bids deemed defective should be condemned. On April 19th the board passed the resolution now before us, which, referring to and purporting to be based solely upon the engineer's report, declares Connolly's bid to be informal and awards the contract to the Complete Electric Construction Company.

The engineer's report sets forth two objections to Connolly's bid—one that the "Standard system," which his bid proposed to use, was not then engaged in building double carbon lamps, although it had done so in the past, but was then building and recommending a single elliptical carbon lamp ; the other, that the "Standard system" had not two central stations, with eighty-light machines in actual operation, although it was then building eighty, one hundred and one hundred and fifty-light machines.

The first of these objections is entirely irrelevant, for while the specifications required the contractor to furnish double carbon lamps, they did not require that the bidder or those behind him should then be actually engaged in the manufacture of such lamps.

The pertinency of the second objection arises out of the following paragraph in the specifications: "Bidders are required to state the system of electrical apparatus they propose to furnish and the makers thereof ; also to name at least two central electric light stations where dynamos of the sizes specified are in actual use, as a reference to enable the board to determine the quality of same, and all bids will be considered as informal

which do not contain this information." To comply with this, Connolly's bid stated : " The system. proposed to be used is 'Standard system' of arc lighting. Dynamos of the sizes and makes proposed are used in central electric light stations at World's Columbian Exposition, Chicago ; Cincinnati Edison Company, Cincinnati, and many others."

The engineer in his report discloses no basis for his assertion that the "Standard system" had not two central light stations with eighty-light machines in actual operation, except this, that the "Fair" building ("Standard system") in Chicago had been visited by himself, or by assistant engineers in his office. From this it may, however, be gathered that the engineer in substance reported, and the board thereupon concluded, that Connolly's statement as to the "Standard system's" dynamos being in use at the World's Columbian Exposition was untrue.

· The question then arises whether this conclusion, thus reached, formed a legal ground for the rejection of Connolly's bid and the acceptance of a higher one.

We think it did not.

Connolly's bid, on its face, was in strict conformity with the advertised requirements, and it was the lowest bid presented. If its statements were substantially true, and he was a responsible bidder, and the sureties offered by him were approved by the board as good and sufficient, he was legally entitled to the contract, in case the board awarded it at all on the proposals then submitted. Falsity in the bid, irresponsibility in the bidder, insufficiency in the sureties, when lawfully ascertained, would afford legal ground for rejecting his bid ; but the ascertainment of these extrinsic facts required the exercise of a *quasi*-judicial function. Whenever such a duty is to be performed, in a matter directly affecting private rights, the party interested must have an opportunity to be heard before the tribunal. The most recent case in this state, exhibiting the application of this principle, is *Traction Co.* v. *Board of Works*, 27 *Vroom* 431, where other cases are cited.

Questions of this character must not be confounded with those matters of public concern which municipal boards are to settle on public considerations only, and which they may so settle without notice to private parties, although private interests be incidentally concerned. Thus, under this statute, the question whether the public interests required the rejection of all the proposals offered could be decided by the board without notice to anyone, in its discretion, as was held in *American Pavement Co.* v. *Wagner,* 139 *Pa. St.* 623.

We think that, for want of notice to the prosecutor and an opportunity to be heard regarding the allegation, that the statement in his bid was false, the resolution under review is illegal.

On examining the reasons assigned for reversal, it seems doubtful whether any of them covers the objection which we deem valid; but as considerable public interests are at stake, we think that before final judgment is pronounced the prosecutor may have time to apply to the court for leave to amend his reasons.