HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED, FREDERIC W. STEVENS AND MARTIN P. GREY, VICE-CHANCELLORS.

SAMUEL H. GREY, ATTORNEY-GENERAL, et al.

*v.*

NEW YORK AND PHILADELPHIA TRACTION COMPANY.

•[Filed March 29th, 1898.]

1. A street railway company failed to comply with an ordinance requiring that its plans for overhead wires be submitted to the township committee for approval, and that it complete its road within a year. It applied for a new franchise, and the committee assured the company that its consent would be

463

granted upon certain terms, to which the company agreed. Construction of the road progressed without objection, and poles were located with the consent of the majority of the committee acting individually. The company, fearing that a rival company would interfere, hurried its road to completion between Saturday night and Monday morning.—*Held,* that further construction and operation of the road would be enjoined until the consent of the committee could be obtained.

2. Where a street railway company, without authority, seized a highway for the construction of its road, a remedy by indictment did not furnish such an adequate remedy at law as prevented the court from enjoining further construction and operation of the road until consent of the township committee could be obtained.

On order to show cause why an injunction shall not issue to restrain the construction and operation of an electric street railway.

*Mr. Willard P. Voorhees* and *Mr. Samuel H. Grey,* attorney-general, for the application.

*Mr. Garret D. W. Vroom, Mr. Alvah A. Clark* and *Mr. Richard V. Lindabury, contra.*

THE CHANCELLOR.

The defendant company is incorporated under the act entitled "An act to authorize the formation of traction companies for the construction of street railways or railroads operated as street railways, and to regulate the same," approved March 14th, 1893. It designed to construct and operate by electric power a single-track railway in the township of Bridgewater, in Somerset county, over the turnpike between Somerville and Bound Brook, and, in November, 1894, secured the passage of an ordinance by the township committee of the township named, assenting to the construction of the railway upon terms prescribed by the ordinance, among which were these: that the location of poles for overhead wires should be under the supervision of the township committee; that before the commencement of the overhead plant of the railway or of any part thereof, plans therefor should be submitted to the township committee for its approval;

and that the railway should be constructed and put in operation within one year, or that "all rights, permits, franchises and privileges granted by the ordinance should be null and void." The traction company did not submit to the township committee plans of the overhead construction, and did not, within a year, complete and put in operation its railway. On the contrary, after delaying the completion of its railway from 1894 until late in 1897, when it had been notified that by the terms of the ordinance the conditional assent to the construction of the railway had, by the terms of the ordinance, become null and void, it first applied for a new consent, and then, experiencing some delay in obtaining that new consent, without waiting for it to be granted, commenced one Saturday, near midnight, with a large force of men, and, working through the following Sunday, night and day, sufficiently constructed its railway to put it completely in operation. The present application seeks the restraint of further construction and operation of the railway, and, through mandatory injunction, the removal of its rails, ties, poles, wires, &c., from the public road, and the restoration of the highway to its former condition. The application followed the hasty work of construction as rapidly as it was possible to prepare the bill and affidavits thereto.

By the defendant's answer it is claimed that the poles were located with the assent of a majority of the members of the township committee acting individually, and that termination of the consent because of non-completion of the railway within the time prescribed by the ordinance was insisted upon by the township authorities merely to secure the township more advantageous terms under a new consent than the ordinance of 1894 afforded. It makes it appear that immediately after the passage of the ordinance some work was done in the construction of the road, and that in 1897, pending negotiations for the additional advantage of the township, other work was done in the same direction which was permitted to proceed without hindrance from the township authorities upon the assurance of both sides that satisfactory terms, then stipulated for, would be agreed upon and a new consent would be given. It excuses the precipitancy

with which the road was constructed and put in operation by claiming that it was frightened by apprehension that a rival railway company would greatly delay or defeat the anticipated consent.

I do not think that the situation made by the answer justifies the seizure of the highway. That seizure was timed and executed in a manner indicative of a purpose to disregard the law, and a disposition to render an appeal to the courts, prior to the completion of the work, impossible. It betrayed a design to obtain possession of a completed operating railway which would yield profits to be enjoyed while vindication of the law might progress subject to the impediments the defendant company might deem proper to use in retarding it, or, while under the advantage possession would give, an adjustment of difficulties might be made.

It is now urged for the defendant that the remedy by indictment will afford adequate relief in the premises, and that, therefore, this court should not interfere even so far as to prevent the permanent completion and the continued operation of the railway. The insistence is that the ruling in *Township of Raritan* v. *Port Reading Railroad Co., 4 Dick. Ch. Rep. 11,* and the cases there cited, should be followed.

I cannot agree to this proposition. To do so would put a premium upon a method of procedure which is defiant of the plain requirement of the law and the exercise of the powers of the courts, the bare statement of which fills the law-abiding and respecting mind with an indignation which commands a complete and instant remedy. The situation is one in which I deem the power of this court, through its writ of injunction, to be justly called into requisition. The defendant corporation is a creature of the statute, empowered to use a public highway only upon performance of the condition precedent that it shall obtain the consent of the governing body of the municipality in which the highway to be used is located. *Gen. Stat. p. 3247.* When control of the use of its highways through such consent is given to a municipality, its authorities may affix to the consent

it gives lawful and reasonable conditions beneficial to the public. *Township of Franklin* v. *Nutley Water Co., 8 Dick. Ch. Rep. 607.*

It can scarcely be questioned that the condition that the railway shall be constructed and put in operation in a year is lawful and reasonable and beneficial to the public. Its utility is emphasized when the possibility of an indefinite tying up of highways by consent against a convenient use of them by the public, in the manner suggested in the opinion of the supreme court in *West Jersey Traction Co.* v. *Camden Board of Works, 27 Vr. 431,* is contemplated.

The effect of such a condition is to limit the consent in duration to one year unless within that year the railway shall be constructed and operated. This was the practical construction put upon the consent by the defendant company, when, in 1897, it applied for a renewal thereof.

The case, then, is one in which the defendant has proceeded and proposes to proceed in the construction and operation of its railway upon the highway named, without having complied with the requirement of the statute that it shall not do so except under consent of the governing body of the township of Bridgewater. It is clearly within the doctrine of the cases of *Inhabitants of the Township of Franklin* v. *Nutley Water Co., supra,* and *Stockton* v. *Atlantic Highlands, &c., Railway Co., 8 Dick. Ch. Rep. 418.* In the former of these cases, Vice-Chancellor Emery stated the principle applied in this language: "For the full protection of the statutory rights of municipalities, a preliminary injunction is necessary, and in this respect the case rests upon the same basis as the right of the court of equity to interfere by preliminary injunction where a public company, under cover of statutory authority, attempts to appropriate the lands of another without complying with the legal conditions precedent, either constitutional or statutory. * * * Where the statutory right is clear, it seems to me it would imperil the public control of highways and deprive municipalities of the powers and advantages intended to be given by statutes, if, on the mere claim of right to occupy the streets without consent, this court should

decline to interfere pending the final determination upon the claim."

When the bill in this case was presented to me I restrained the completion and further operation of the railway in Bridgewater township, pending the determination upon the order to show cause now made. I will continue that restraint to the final hearing. An injunction may issue accordingly. If consent of the township committee shall be had before final hearing, application may be made to dissolve the injunction.