DENNIS LONG AND FRED KRUEGER, PROSECUTORS, v.
THE TOWNSHIP OF UNION AND THE CLINTON HILL
CEMETERY ASSOCIATION ET AL., DEFENDANTS.

DENNIS LONG AND FRED KRUEGER, PROSECUTORS, v.
THE BOARD OF HEALTH OF THE TOWNSHIP OF
UNION AND THE CLINTON HILL CEMETERY ASSOCIA-
TION, DEFENDANTS.

Argued June 2, 1909—Decided October 23, 1909.

A grant was made by a township committee and a board of health to
a cemetery company, to locate its burying-ground within the town-
ship, which consent was induced by a contract on behalf of the
company to build and cause to be operated, a trolley line, not as a
means of reaching the cemetery merely, but as an accommodation
to the residents of a section of the township, irrespective of ceme-
tery uses. *Held*, that the township committee and the board of
health, in making the grant, were exercising *quasi*-judicial func-
tions, and *held*, that they were improperly influenced by the con-
tract to build and operate the trolley road. [1]

On *certiorari*.

Before Justices REED, BERGEN and VOORHEES.

For the prosecutors, *Lindabury, Depue & Faulks*.

For the township of Union, *John K. English*.

For the Clinton Hill Cemetery Association, *Herman A.
Berg* and *William D. Edwards*.

The opinion of the court was delivered by

REED, J. The first of the two consolidated writs of *cer-
tiorari* brings up an ordinance passed by the township com-
mittee of the township of Union, county of Union, on March
18th, 1909, entitled "An ordinance granting the consent and
approval of the township committee of the township of Union

to the Clinton Hill Cemetery Association, to locate and establish a new cemetery or burying-ground in the township of Union."

The writ brings up, also, an agreement between the Clinton Hill Cemetery Association and the township of Union, which agreement was executed on March 16th, and was executed as an inducement to procure the passage of the ordinances of March 18th.

The second writ brings up a resolution adopted by the board of health of the township of Union on March 18th, 1909, granting the consent and approval of said board to the Clinton Hill Cemetery Association to locate a new cemetery in said township.

The purpose of the prosecutors is to have the consents given by this ordinance and this resolution vacated.

The Clinton Hill Cemetery Association is incorporated under the General Cemetery statute (*Gen. Stat., p.* 348) and its supplements. By force of a supplement to the Cemetery act, which supplement was approved April 24th, 1906 (*Pamph. L., p.* 283), it could not locate its burying-ground within the township of Union without the consent of the township committee and the consent of the board of health of the township. The members of the township committee, together with the assessor, and a physician appointed by the township committee, constitute the local board of health. *Gen. Stat., p.* 1636, § 10. On December 22d, 1908, this corporation made application to the township committee and to the board of health of the township of Union for their respective consents to the location by the said association of a new cemetery in the township of Union.

After this application was made the township committee and the board of health of the township called a public meeting—although the statute does not require notice—and heard the sentiment of those attending the meeting, which sentiment, with the exception of that of two persons, was opposed to the grant; although it was represented on behalf of the applicants that if consent was granted the cemetery association would present to the township bonds amounting to ten thousand

dollars ($10,000) for the purpose of insuring the township against loss arising from the immunity of the cemetery property from taxation. No action was then taken by the township committee.

Thereafter the cemetery association offered the following inducement to obtain the requisite consent of the township authorities: *First,* that it would give ten bonds of $1,000 each, payable in ten years, to bear six per cent. interest, to be secured by a mortgage on the lands of the cemetery association, and to be guaranteed in such manner as should meet the approval of the township attorney; *second,* a promise to construct an electric street railway from Irvington, by way of Stuyvesant avenue, adjacent to which avenue the cemetery should lie, to be operated by the Public Service Corporation, for a five-cent fare.

Another public meeting was called by the township committee and by reason of the trolley proposition, a change of public sentiment was effected in favor of a consent to the location of the cemetery within the township. Such approval was given by the township committee and by the board of health.

The understanding thus reached was consummated by a paper executed by the Clinton Hill Cemetery Association on March 16th, 1909. By this instrument the cemetery association covenanted with the township of Union that if the township committee would grant to said cemetery association the right to locate a new cemetery within the corporate limits of the said township, at the place described in the application for such consent, the association would deliver to the township committee, for the benefit of the township, ten of the debenture bonds to be issued by the cemetery association covering the lands of the said association, each bond being of the denomination of $1,000, bearing six per cent. interest, and expiring twenty years from the date thereof. The association also covenanted to grant to the township a plot of land within the limits of the cemetery, to be used for the interment of the pauper dead of the township. The association also covenanted to set aside five per cent. of the receipts from the

sale of burial lots for the purpose of securing the maintenance in good order of the lands devoted to cemetery purposes.

This paper also recites that it was understood that in the event of the consent to locate by the municipal authorities being revoked, set aside, or declared void by any court or body having jurisdiction thereover, then the paper shall be null and void.

The paper further recited that it was mutually agreed that the township of Union reserved the right to revoke the franchise for the location of the cemetery, if Thaddeus L. Walker, or his assigns (with whom the said township had entered into an agreement in writing, bearing even date with the paper containing the recitation), failed to construct the trolley line and to build the roadway specified and required by said agreement, such revocation to be made within six months after the limitation of the time in the said agreement, and on three months' written notice to said Walker, or his personal representative or assigns.

The agreement entered into on the same date, March 16th, between the township of Union and Thaddeus L. Walker, referred to in the preceding paper, provides for the construction and operation of a trolley road by Thaddeus L. Walker, and for certain acts to be done by the township in aid of that enterprise. In it Walker agrees to incorporate a company to operate an electric street railway on Stuyvesant avenue, and he agrees to secure the building of a single track railway and appurtenances upon the said avenue from the corner of Stuyvesant avenue and Morris avenue, in the township of Union, in the boundary line of the township of Irvington, with a loop of the Public Service railway on Halstead avenue and Forty-third street, in the township of Irvington, by way of Stuyvesant avenue, Fortieth street and Halstead avenue. Walker agrees to procure the operation of said trolley road from the Meeker Inn, in the township of Union, along Stuyvesant avenue, Fortieth street and Halstead avenue, and from thence over the tracks of the Public Service Corporation to the depot of the Pennsylvania Railroad Company at Market street, in the city of Newark, upon the payment of a five-cent fare for

the entire distance, with certain transportation privileges, the cars to be run within the hours of six A. M. and twelve P. M.

Walker further agrees to pay to the township the yearly sum of $450 for twenty years to keep Stuyvesant avenue in repair. Walker also agrees to furnish a bond to secure the performance of his covenant. Walker also agrees to bear and pay all the expenses incurred by the township of Union in any condemnation proceedings, or other expense necessary to the widening of Stuyvesant avenue, including such damages occurring to property owners on Stuyvesant avenue as the township should be called upon to pay. These are the covenants of Walker.

The township, in the agreement, promises to fix the limits and route of Stuyvesant avenue within the limits of the township, and by condemnation, or otherwise, to widen Stuyvesant avenue on its southeasterly side, so that it shall have a uniform width of seventy feet from Morris avenue to the boundary line of the township of Irvington. The township also agrees to grant its consent to the trolley company to place its road upon Stuyvesant avenue.

The board of health, in acting upon the question of granting a right to locate a cemetery, was exercising a *quasi*-judicial function. This was so held in respect to the action of the state board of health in passing upon the same question upon appeal. *Dodd* v. *State Board of Health,* 38 *Vroom* 463.

So, also, were the duties of the township committee, the members of which constituted a majority of the board of health, *quasi*-judicial in character.

The reasoning by which, in the case of *Traction Company* v. *Board of Works,* 27 *Vroom* 431; *affirmed, sub. nom. Camden Horse Railroad Co.* v. *Traction Company,* 28 *Id.* 710, it was held that the board of public works, in granting by ordinance a permission to a trolley company to lay its tracks in certain streets in the city of Camden, was exercising *quasi*-judicial functions, leads logically to the conclusion that the township committee were, in the present case, exerting similar powers.

It is entirely settled that a person acting in a judicial capacity should not be influenced by any personal interest; and if

it appears that the conduct of such an officer, or of the board of which he is an acting member, taking part in the proceeding, was so influenced, the judgment or *quasi*-judgment will be declared void upon *certiorari. Winans* v. *Crane,* 7 *Vroom* 394; *Traction Company* v. *Board of Works,* 27 *Id.* 431; *Drake* v. *Elizabeth,* 40 *Id.* 190.

The question remains whether the inducements held out by the cemetery company were such as to illegally influence the judgments of the township committee and the board of health. In the solution of this question we will assume that the township committee, before it grants consent, may exact conditions which look to the proper management and usefulness of the cemetery.

The ground upon which control over burial plots was placed under police regulations is that while the devotion of some grounds for burial purposes is necessary, yet the amount of space and the location and surroundings of a cemetery should be controlled by some governmental body, so that the least injury shall be done to other property and to the public by the location of the burying-ground.

The degree in which the place shall subserve the purpose of the public is a factor in determining the location of the cemetery, and accessibility to the place is a fact to be considered. Therefore a condition, the performance of which is secured by contract or otherwise, that a road to the cemetery shall be opened, or kept in repair, may be unobjectionable.

So, again, a condition or contract that the cemetery company shall pay taxes upon the property, or insure the township against its loss by reason of the statutory immunity of cemetery property from taxation, would, I think, be legal.

The Cemetery act (*Gen. Stat.,* p. 350, § 8, and *p.* 360, § 56) provides that cemetery lands and property of any association, a bond and mortgage given to secure the purchase shall be exempt from all public taxes, rates and assessments. This clause did not constitute a contract of exemption. *Cemetery Company* v. *Newark,* 21 *Vroom* 66.

If it did constitute such a contract, nevertheless it would not prevent the company from waiving the exemption thus

granted. *Given* v. *Wright,* 12 *Vroom* 478; *affirmed,* 14 *Id.* 455; 12 *Cyc.* 382.

. There would therefore, I think, have been no infringement of public policy had the cemetery company agreed to waive its exemption from taxation, or agreed to pay the amount which would have been received from the tax upon this property if left free from cemetery uses.

While the contract executed contained no reference to the purpose for which the ten $1,000 bonds were to be given to the township of Union by the cemetery company, it does appear from the testimony taken to be used upon this hearing that the purpose was to secure the township against the loss of taxes upon this property.

It is perceived that the amount received by the township was not limited to or measured by the amount of taxes lost by the township. There was neither a waiver of exemption from taxation nor an agreement to secure the township against loss resulting from the immunity of this property from taxation when devoted to cemetery uses. The contract was that a sum of $10,000 should be paid to the township. Yet the property would still be immune from taxation. It would be eliminated from the ratables, not only as a subject for the imposition of township taxes, but for county and state taxes as well.

While the inhabitants of the township might be more than reimbursed for the additional tax which would fall upon the remaining property in the township, the owners of property elsewhere in the state would secure no compensation for the additional burden imposed upon their property, by the removal of this cemetery property from the ratables.

So far as appears the amount to be received by the township might have been based at one hundred instead of ten thousand dollars. In view of the far reaching effect of the grant of a right to appropriate this land for cemetery purposes, it is questionable whether the township committee and the board of health were not illegally influenced in deciding whether the grant should be made by an interest, as residents of the township, arising out of the amount to be received by the township.

But there is a feature of the contract which, we think, was clearly an illegal inducement to the judicial action of the committee and the board. The consent was based upon the contract of Mr. Walker, already set out, to build and cause to be operated a trolley line. The testimony clearly shows that the trolley was to offer facilities for transportation to the inhabitants of this section of the township, irrespective of cemetery uses. This promise constituted a bribe which changed the sentiment of those in the vicinage from opposition to friendliness toward the cemetery project, and undoubtedly influenced the judgment of the committee and the board of health in arriving at the conclusion that the location for this burying-ground at this point should be permitted.

For this reason we think both ordinance and resolution should be vacated.

It may be observed that the right conferred by the act of 1906 (*p.* 283), upon ten citizen freeholders of the township to take an appeal to the state board of health from the decision of the local authorities, does not strip this court of its power to set aside the action of the local authorities. When the committee and board became disqualified by reason of the presence of illegal influences or interests to decide the judicial question involved, each person affected had a right to challenge the decision by the employment of a writ of *certiorari*. Such person is not deprived of such right because ten persons may take an appeal to some other board.